**AMERICAN INSTITUTE OF CERTI-FIED PUBLIC ACCOUNTANTS,**
Plaintiff,

v.

**AMERICAN INSTITUTE OF CERTI-FIED PUBLIC ACCOUNTANTS, Inc.,
A. R. Garcia Calderon, Orlando Vargas Colon, and Jose E. Gonzalez,** Defendants.

Civ. No. 73–58.

United States District Court
D. Puerto Rico,
San Juan Division.
May 23, 1960.

Fernando Ruiz Suria, Gonzalo Sifre & Jaime Sifre, Jr., San Juan, P. R., Fontaine C. Bradley, Washington, D. C., for plaintiff.

F. Fernandez Cuyar, San Juan, P. R., for defendants.

RUIZ-NAZARIO, District Judge.

This cause having been duly heard upon the pleadings and evidence, and the court being duly advised in the premises hereby makes the following:

### Findings of Fact

**1.**

The plaintiff, "American Institute of Certified Public Accountants", is a corporation organized under the laws of the District of Columbia. The defendant, "American Institute of Certified Public Accountants, Inc.", is a corporation organized under the laws of the Commonwealth of Puerto Rico. The individual defendants, A. R. Garcia Calderon, Orlando Vargas Colon and Jose E. Gonzalez, are citizens of the Commonwealth of Puerto Rico. There is no dispute between the parties as to the diversity of citizenship between the plaintiff and the defendants.

**2.**

The plaintiff was organized on May 23, 1916, under the laws of the District of Columbia. Its original name was "The Institute of Accountants in the United States of America". On January 22, 1917, its name was changed to "The American Institute of Accountants". Its name continued to be "The American Institute of Accountants" until June 3, 1957, when its name was changed to "American Institute of Certified Public Accountants".

**3.**

Plaintiff is the only national professional organization of certified public accountants. Its membership embraces members from every state, territory and Puerto Rico. At the time of the filing of this suit in March of 1958, it had a total membership of approximately 31,000 certified public accountants. Approximately 60 of its members are located in Puerto Rico. Its membership in Puerto Rico represents between eight and nine per cent of the total certified public accountants in Puerto Rico.

**4.**

Since 1936, plaintiff's by-laws have included, as a requirement for membership, a provision that the applicant be the hold-

er of a certificate as a certified public accountant issued by a state or territory or Puerto Rico. Of plaintiff's total membership of 31,000, there are a very small number—only 37—who are not certified public accountants. They became members before 1936, when others than certified public accountants were admitted by examination.

5.

From 1941, until plaintiff's change of name in 1957, its stationery carried beneath its name a prominent legend reading "The National Organization of Certified Public Accountants".

6.

The defendant corporation also is a professional organization of certified public accountants. It is a newcomer. It was organized under the laws of the Commonwealth of Puerto Rico on May 23, 1957, shortly prior to the effective date of change in plaintiff's name, but about five months after plaintiff's membership had voted to change its name. By a certificate of amendment to the defendant corporation's certificate of incorporation, filed August 13, 1957, it expanded its purposes so as to provide that it is "to be known as a professional association of a world-wide character; that in the English language be read as 'A world-wide organization of the practicing C. P. A. * * *'."

7.

The individual defendants, A. R. Garcia Calderon, Orlando Vargas Colon and Jose E. Gonzalez, are the sole members, officers, incorporators and directors of the defendant corporation, American Institute of Certified Public Accountants, Inc. The defendant, A. R. Garcia Calderon, is the President of the defendant corporation; the defendant, Orlando Vargas Colon, is its Secretary; and the defendant Jose E. Gonzalez is its Treasurer.

8.

When the individual defendants selected the name "American Institute of Certified Public Accountants, Inc." as the name of the corporation they organized under that name, they did so with knowledge of the existence of the plaintiff corporation and of its name, which was then "The American Institute of Accountants". Accordingly, they deliberately selected as the name of their proposed new corporation a name containing the words "American Institute", which were then, and for many years prior thereto had been, the dominant features of plaintiff's name.

The defendant, Orlando Vargas Colon, who is an incorporator, a director and the Secretary of the defendant corporation, knew at the time of the organization of the defendant corporation that the plaintiff had members in Puerto Rico; that the plaintiff had for years published bulletins on accounting and auditing standards; and that it was the publisher of books and other publications dealing with accounting matters, some of which he had previously purchased from the plaintiff. Approximately one week prior to the organization of the defendant corporation, this individual defendant purchased from the plaintiff in New York City 300 imprinted bank conformation forms. His knowledge of plaintiff extended back for many years. He had known of its existence since as early as 1940. Also, he knew at the time of the organization of the defendant corporation that the plaintiff had developed a uniform type of examination which was then utilized by all states, the District of Columbia, the territories and Puerto Rico, and that it had promulgated rules of professional conduct.

9.

When the defendant corporation was organized in May of 1957, the individual defendants knew of the decision made by plaintiff's membership in December, 1956, to change its name to "American Institute of Certified Public Accountants" and to make the change effective about June 1, 1957.

10.

In July, 1957, the defendant corporation solicited membership in its organization by publishing advertisements in local

newspapers in Puerto Rico, one of which then had a small circulation in New York City, where plaintiff's offices are located. Plaintiff promptly requested the corporate defendant to cease using its name. This request was summarily rejected.

Subsequently, the defendants decided to restrict their membership to the three individual defendants until the termination of this litigation. Consequently, the only members of the defendant corporation, and its only directors and officers, are the three individual defendants. Although defendants have engaged in practically no activities subsequent to the publication of the advertisements mentioned, they have not abandoned their initial plans to increase their membership and to carry out their general plan of activities, which the defendants have stated to be as follows:

"(1) The association of all the Certified Public Accountants by statute into a single organization; (2) building a clubhouse; (3) promotion of rapprochement among fellow accountants; (4) offer services of legal counsel; (5) sponsor services of professional publication and guidance; (6) stimulate the study of accounting by means of prizes and scholarships to outstanding students; and (7) publish our own professional review."

Also, the corporate defendant has not abandoned its stated plan to become "A world-wide organization of the practicing C. P. A. * * *", as stated in the August, 1957 amendment to its certificate of incorporation.

The individual defendant, A. R. Garcia Calderon, is a practicing accountant in Puerto Rico. He has on his office door in Puerto Rico a sign reading "American Institute of C. P. A.".

### 11.

Plaintiff's long and extensive use of its name "The American Institute of Accountants" has caused the words "American Institute" to acquire a secondary meaning indicating the plaintiff, when used in connection with accounting matters in the United States and Puerto Rico and in international accounting circles.

During the more than forty years of plaintiff's existence, its name has become well-known in accounting, financial and governmental circles in the United States and in Puerto Rico.

Its contact with governmental organizations and private agencies during this period has extended over a very wide field, and has covered a wide variety of accounting matters affecting the public and the accounting profession. A partial list of organizations and agencies with which it had contact in the single year ending August 31, 1957, showed a total of seventy-eight of such organizations and agencies, including the Bureau of the Budget of the United States, the Treasury Department of the United States, the Home Loan Bank Board, the Interstate Commerce Commission, the New York Stock Exchange, Robert Morris Associates, a national association of bank credit and loan offices, the Surety Association of America, the Securities and Exchange Commission, and many others.

Plaintiff is well-known in accounting, financial and governmental circles in other ways. It publishes a monthly magazine, "The Journal of Accountancy", which has a circulation in excess of 86,000. Approximately 55,000 of this circulation represents subscribers who are not members of the plaintiff. Approximately 192 of its nonmember subscribers are located in Puerto Rico.

Plaintiff publishes a wide variety of publications dealing with accounting and auditing matters. The volume of distribution of these publications is large. During the one fiscal year ending August 31, 1957, its revenues from its publications, other than "The Journal of Accountancy", less production costs, were in the neighborhood of $196,000. During the fiscal years ending August 31, 1957, and August 31, 1958, many individuals and organizations located in Puerto Rico, who were not members of the plaintiff, purchased many of the plaintiff's publications. Orders for them were filled from stock of the plaintiff in New York City

and were shipped or mailed from that location by plaintiff to the purchasers in Puerto Rico. Included among such purchasers are individuals, banks, Puerto Rican businesses, Puerto Rican universities, branches of the Government of the Commonwealth of Puerto Rico and Puerto Rican book stores.

With one exception, such of these publications as were sold to buyers in Puerto Rico prior to June 3, 1957, prominently showed "The American Institute of Accountants" as the publisher. The exception was a publication entitled "Uniform CPA Examination Questions—1954–56", which was published in April, 1957, shortly prior to the effective date of the change in plaintiff's name. On this publication, the name "American Institute of Certified Public Accountants" appeared as the publisher. This publication was purchased by the Catholic University of Puerto Rico on April 9, 1957, prior to the organization of the defendant corporation, and prior to the effective date of plaintiff's change of name. Consequently, the plaintiff was the first to use the name "American Institute of Certified Public Accountants" in a transaction with one of the public in Puerto Rico.

A substantial number of the publications sold to nonmembers in Puerto Rico after the effective date of plaintiff's change of name carried the name "American Institute of Certified Public Accountants" as publisher, and some of them, because stocks had not become exhausted, carried the name "The American Institute of Accountants" as Publisher.

Publications of the plaintiff, bearing its name as publisher, are available in the Library at the University of Puerto Rico for use of students and others having access to the Library.

Some certified public accountants in Puerto Rico show on their stationery that they are members of the plaintiff organization.

Two of the members of the Council of the plaintiff, which is its governing body, reside in Puerto Rico.

Accountants who are not members of plaintiff nevertheless receive information in Puerto Rico from time to time advising them as to the activities of plaintiff.

Plaintiff has been well-known to bankers in Puerto Rico for many years, some of whom testified that, to them, the words "American Institute" mean the plaintiff —a national organization of certified public accountants.

Plaintiff is also well-known in international accounting circles, having participated in international meetings of accountants in the United States, Puerto Rico, Canada, Mexico, Brazil, Chile, Turkey, England, Holland and Germany.

Plaintiff's headquarters are in New York City, where it maintains its offices and a large library of accounting books and literature which is open to the public.

The plaintiff prepares a two and one-half day examination in accounting, auditing and commercial law, and offers it to the states and territories as a basis for their certified public accountant examination. This practice has been in effect for many years. Puerto Rican authorities permit applicants for the certified public accountant certificate here to take this examination if they wish. However, whether they take it is optional with the applicant. This optional aspect of the matter is true only in Puerto Rico.

To become a member of plaintiff, one must be a certified public accountant and must also have passed an examination satisfactory to plaintiff. If the examination which the prospective member took as a basis for obtaining his certificate as a certified public accountant from a governmental authority is considered by plaintiff to be inadequate, or if the applicant took no such examination, plaintiff gives the applicant a special examination. None of the individual defendants passed an examination as a prerequisite to becoming a certified public accountant in Puerto Rico, and none are members of the plaintiff.

**12.**

The value to the plaintiff of the exclusive right to use the name "American Institute of Certified Public Accountants", without being subjected to the use of the same or a confusingly similar name by the defendant corporation, is in excess of $3,000.

As of August 31, 1957, plaintiff's total assets (excluding any value for its name or good will) had a value of approximately $1,460,000. Its total revenues for that year were approximately $1,750,000. Of such total revenues, approximately $837,000 represented revenues from dues, application and reinstatement fees; $455,000 represented revenues from "The Journal of Accountancy" previously mentioned; $196,000 represented revenues from sales of publications, other than "The Journal of Accountancy", and approximately $202,000 represented fees received from state boards of accountancy for plaintiff's examination and grading services.

**13.**

The evidence in this case is insufficient to show a case of obstinancy under Section 1461 of Title 32 of L.P.R.A. so as to warrant an award to plaintiff of counsel fees against defendants.

**14.**

Unless the defendants herein, and each of them, and the officers, agents and employees of the corporate defendant, American Institute of Certified Public Accountants, Inc., are restrained from using, or aiding or participating in the use of, the names, "The American Institute of Accountants" or "American Institute of Certified Public Accountants" or "American Institute of Certified Public Accountants, Inc.", or any other name or names which are so similar to the plaintiff's name as probably to cause confusion therewith, the good will of the plaintiff incident to the dominant features of its name, which has been developed over a period in excess of forty years, will be jeopardized, thereby causing the plaintiff to suffer irreparable injury, loss and damage, for which the plaintiff has no plain, adequate or complete remedy at law.

## Conclusions of Law

**1.**

The amount in controversy is in excess of $3,000. The plaintiff is a citizen of the District of Columbia, and the defendants are citizens of Puerto Rico. Consequently, this Court has jurisdiction of this case under Title 28, Section 1332, U.S.C., as amended July 26, 1956, 70 Stat. 658.

**2.**

Plaintiff having established, as a matter of fact, that the words "American Institute", when used in relation to accounting matters, have a secondary meaning indicating the plaintiff, it follows, as a matter of law, that the plaintiff is entitled to protection against the defendants' use of a name containing these words or any confusingly similar words.

**3.**

It is not necessary that plaintiff established actual confusion as a prerequisite to obtaining an injunction preventing the defendants from using a name which is the same as, or similar to, that of the plaintiff. The probability of confusion is sufficient.

**4.**

Restraining defendants from using the name of the corporate defendant would not injure them in any substantial way, as they have been relatively inactive and can readily change their name to a noninfringing name. On the other hand, denial of plaintiff's request for an injunction would result in causing confusion of the public and substantial irreparable damage to the plaintiff when the defendants resume their activities.

**5.**

By forming a corporation under the general law permitting the organization of corporations in Puerto Rico, the defendants acquired no right to appropriate the plaintiff's name or the dominant words of plaintiff's name.

**932**

**6.**

█ The Court having found, as a fact, that the evidence is insufficient to show a case of obstinacy on the part of defendants under Title 32, Section 1461 of LPRA, it follows, as a matter of law, that plaintiff is not entitled to an award of counsel fees against the defendants.

### Judgment

This cause having been heard upon the pleadings, evidence and briefs, and it appearing therefrom to the satisfaction of the Court that, unless the defendants, and each of them, and the officers, agents and employees of the corporate defendant, American Institute of Certified Public Accountants, Inc., are restrained from using, or aiding or participating in the use of, the names "The American Institute of Accountants" or "American Institute of Certified Public Accountants" or "American Institute of Certified Public Accountants, Inc.", or any other name or names, which are so similar to the plaintiff's name as probably to cause confusion therewith, the good will of the plaintiff incident to the dominant features of its name, which has been developed over a period of in excess of forty years, will be jeopardized, thereby causing the plaintiff to suffer irreparable injury, loss and damage, for which the plaintiff has no plain, adequate or complete remedy at law, it is by the Court, this 23 day of May, 1960,

Adjudged, ordered and decreed, that the defendants, and each of them, and the officers, agents and employees of the corporate defendant be, and hereby are, enjoined from using, as the name of the corporate defendant or as the name of any organization of accountants other than the plaintiff, the names, "The American Institute of Accountants" or "American Institute of Certified Public Accountants" or "American Institute of Certified Public Accountants, Inc.", or any other name or names which are so similar to the plaintiff's name as probably to cause confusion therewith; and that said defendants, and each of them, and the officers, agents and employees of the corporate defendant be, and hereby are, enjoined from aiding or participating in any such prohibited use; and it is further

Adjudged, ordered and decreed, that this Judgment shall not prevent the defendants from making such references to the name of the corporate defendant as may be necessary to effectuate a change of its name to one which does not violate the provisions of this Judgment or to dissolve the corporate defendant; and it is further,

Adjudged, ordered and decreed, that plaintiff's claim for an award of counsel fees against defendants herein be, and the same is hereby disallowed; and it is further,

Adjudged, ordered and decreed, that this Court retains jurisdiction over this cause for such other and further orders and decrees as may be necessary, or the interests of the parties may require.